UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

REGINALD MONROE,                                     :

                          Petitioner,               :      **MEMORANDUM DECISION**

             - v -                                   :      16-CV-04788 (DC)

THOMAS GRIFFIN,                                      :

                          Respondent.               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:              REGINALD MONROE
                          Petitioner *Pro Se*
                          12A0225
                          Green Haven Correctional Facility
                          P.O. Box 4000
                          Stormville, NY  12582

                          MELINDA KATZ, Esq.
                          District Attorney, Queens County
                          By:    John M. Castellano, Esq.
                                 Ellen C. Abbot, Esq.
                                 Assistant District Attorneys
                          125-01 Queens Boulevard
                          Kew Gardens, NY  11415
                                 Attorney for Respondent


CHIN, Circuit Judge:

             In 2012, following a jury trial, petitioner Reginald Monroe was convicted

in the Supreme Court of the State of New York, Queens County (Lasak, *J.*), of second-

degree murder and third-degree weapons possession.  Monroe was sentenced to an

indeterminate term of 25 years to life for murder and one year for weapons possession,

to run concurrently.  *See* Dkt. 15-11 at 116.  His convictions were affirmed by the

Appellate Division, Second Department, *People v. Monroe*, 987 N.Y.S.2d 243 (2d Dep't

2014) ("*Monroe I*"), and the New York Court of Appeals denied his application for leave

to appeal, *People v. Monroe*, 25 N.E.3d 350 (N.Y. 2014) (Smith, J.) ("*Monroe II*").

On June 30, 2016, proceeding *pro se*, Monroe filed the instant petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition").  *See* Dkt. 2.

Monroe argues that (1) he was denied his statutory right to exercise peremptory

challenges and that, as a result, his due process right to a fair trial before an impartial

jury was violated and (2) he had ineffective assistance of appellate counsel for

various reasons.  *See id.* at 3-4.  The Queens County District Attorney's Office filed its

opposition to the Petition on May 10, 2017.  *See* Dkt. 14.  On February 3, 2023, the

case was reassigned to the undersigned.

For the reasons set forth below, Monroe's petition is DENIED.

## BACKGROUND

I.      *The Facts[1]*

On June 21, 2000, Monroe shot John Williams in the neck and torso and

stabbed him approximately 57 times, killing him.  Williams lived with Darryl Privott on

the third floor of an apartment building at 106-53 150th Street in Queens, and Monroe

lived on the second floor of that building.  *See id.* at 3-4.

---

[1]      The facts are drawn from the affirmation submitted in opposition to the Petition.
The recitation of facts set forth in the affirmation are supported by detailed citations to the
record, including the trial transcript.  *See* Dkt. 14.

Around 9:30 a.m. that day, Monroe, who was with another individual, approached Privott and asked him whether Williams was home. Privott responded that he was, and Monroe told Privott that he wanted to confront Williams about an incident involving a woman who lived in the building. Monroe instructed Privott to stay at the grocery store and not to enter the apartment building where they lived. Around 10:30 a.m., Sean Howell, who lived on the first floor of the building, was sleeping in his apartment and heard the sound of someone falling down the stairs. He looked through the peephole of his door and saw Williams in the hallway, yelling for Monroe not to kill him. *See id.* at 4.

At the same time, Privott arrived at the front door of the building. He looked through the window and saw Monroe, who yelled, "[D]idn't I tell you to stay away from the house," and placed his hand on the window. Privott observed that Monroe's hand was bloody, and he heard the sound of someone moaning inside. He left the building and went to a friend's house. *See id.*

Around 1:00 pm, Privott returned to the building. Howell and his brother, who also lived in the building, opened the front door to let Privott in. Privott observed blood on the carpet and saw that the stair banister was broken. Privott, Howell, and Howell's brother went upstairs to the third floor and noticed a trail of blood that went from the third floor apartment all the way downstairs to the building cellar door. They opened the cellar door and observed blood on the cellar stairway, but none of them went into the basement. *See id.* at 4-5.

3

Privott packed a bag, went to his mother's house, and told her what had happened. His mother told him that a warrant squad was looking for him. (He had an outstanding warrant in an open criminal case). He called the warrant squad, and the individual on the phone told him that a police officer would be there to pick him up the next day. *See id.* at 5.

The next morning, a police officer came to pick Privott up, and Privott told the police officer everything that he observed at his building the day before. Police officers went to the building, and, upon entering the basement, a detective observed Williams' dead body hanging from the stair runner with multiple stab wounds. The detective recovered a knife from a garbage can on the first floor as well as two scissors and two deformed bullets from the third-floor apartment. No gun was found at the scene. The knife had Williams's blood on it. *See id.*

Monroe was arrested. He waived his *Miranda* rights and gave an oral and written statement that he had gotten into an altercation with Williams. He stated that he stabbed Williams "a lot of times" because he thought Williams had a gun during the fight. He also stated that during the fight, the gun went off two times causing Williams to fall back. *See id.* at 5-6; Dkt. 15-8 at 103-04.

A forensic examiner performed an autopsy on Williams's body. She observed stab wounds to his neck, chest, arms, hands, and fingers. She also observed bullet wounds to his neck and chest and recovered a bullet from his chest. She testified that there were potentially three instruments used for the stabbings, and she

determined that Williams died from the stab and gunshot wounds to his chest and neck. *See* Dkt. 14 at 6; Dkt. 15-9 at 68.

II.     *Procedural History*

     A.     **State Court Proceedings**

        Monroe was charged with second-degree murder, second-degree weapons possession, third-degree weapons possession, and tampering with physical evidence. Dkt. 15-3 at 63. The case proceeded to trial.

        On September 12, 2011, the third round of jury selection began with the court resolving a *Kern* challenge advanced by the People. Dkt. 15-5 at 19.[2] After defense counsel exercised a peremptory challenge against an Asian juror, the People made an application asserting that defense counsel was using her peremptory strikes to challenge all of the Asian jurors presented. *See id.* at 13-14. The court concluded that the People failed to make a prima facie case of discrimination. *See id.* at 19. Thereafter, the court asked defense counsel if there were any other challenges up to juror number 12, and defense counsel said no. The court asked, "Marilyn Brown, Melida Sandiford, and Louis Canella[s]luis are acceptable to both sides?," to which both parties responded "That is correct." *Id.* at 20.

---

[2]     In *People v. Kern*, the New York Court of Appeals held that peremptory challenges cannot be used to exclude jurors solely on the basis of their race. 554 N.E.3d 1235, 1242 (N.Y. 1990).

The court moved on to juror number thirteen.  Neither party exercised a challenge for cause, but defense counsel exercised a peremptory challenge against the juror.  The court moved on to juror number fourteen.  Again, neither party exercised a challenge for cause, but the People exercised a peremptory challenge against the juror. The court then moved on to juror number fifteen.  Both parties said that they did not want to exercise challenges for cause.  The court then asked defense counsel whether she wished to exercise a peremptory challenge against the juror, and defense counsel responded that she actually wanted to make a peremptory challenge against Mr. Canellasluis, a juror who had already been approved by both parties and seated.  She stated that she had previously made a mistake.  The court responded, "We have already passed that." *Id.* at 20-21.

The court asked the prosecutor whether he would consent to a belated peremptory challenge, and the prosecutor responded that he did not consent.  Defense counsel stated for the record that she did not believe anyone would be advantaged or disadvantaged by allowing the belated challenge, and the court explained that it had specifically asked whether Mr. Canellasluis was a satisfactory juror, to which both parties had answered yes. *See id.* at 21-22.  At the conclusion of the jury selection round, Mr. Canellasluis was sworn in as a juror. *See id.* at 31.

Evidence at trial included the testimony of Privott, Howell, and the detective who interviewed Monroe, as well as Monroe's written admission to law enforcement that he stabbed Williams. *See* Dkts. 15-3 at 28, 15-8 at 2-83, 103, 129-149; 15-9 at 1-10.  The jury returned a verdict on January 4, 2012, finding Monroe guilty of

second-degree murder and third-degree weapons possession.  He was acquitted of

second-degree weapons possession and tampering with the evidence.  *See* Dkt. 14 at 6

n.2.  He was sentenced to an indeterminate sentence of 25 years to life for murder and

one year for weapons possession, to run concurrently.  *See* Dkt. 15-11 at 116.[3]

Represented by counsel, Monroe appealed the judgment of conviction to

the Appellate Division, Second Department in May 2013, arguing that he was denied

his statutory right to exercise peremptory challenges and that his due process right to a

fair trial was violated because the court did not allow defense counsel to make an

untimely peremptory challenge.  *See* Dkt. 15 at 14.  On June 18, 2014, the Appellate

Division affirmed Monroe's judgment of conviction, holding that the Supreme Court

"providently exercised its discretion in denying the defendant's belated peremptory

challenge."  *Monroe I*, 987 N.Y.S.2d 243.  On December 8, 2014, the New York Court of

Appeals denied Monroe's application for leave to appeal.  *See Monroe II*, 25 N.E.3d 350.

On January 28, 2015, Monroe filed *pro se*, in the Supreme Court of the

State of New York, Queens County, a motion to vacate judgment pursuant to N.Y.

Criminal Procedure Law § 440 ("§ 440 motion").  Monroe argued that his appellate

counsel was ineffective because he failed to raise the following grounds on direct

appeal -- that (1) the evidence was legally insufficient to establish guilt and the

people failed to disprove his justification defense, (2) the police and prosecution

committed bribery and perjury, and (3) he was denied the right to testify at trial.  *See*

---

[3]     Monroe's conviction of third-degree weapons possession was reduced to fourth-degree weapons possession at sentencing.  Dkt. 15-11 at 76, 106.

Dkt. 15 at 88-101, 109.  On May 19, 2015, the Queens County Supreme Court denied the motion, concluding that Monroe had not raised his claims in the proper venue and that Monroe failed to allege a sufficient factual or legal basis entitling him to relief.  *See id.* at 123-24.

On June 17, 2016, Monroe filed a petition for a writ of error *coram nobis* in the Appellate Division, Second Department, claiming that he received ineffective assistance of appellate counsel for various reasons.  *Id.* at 125-57.  On January 11, 2017, the Appellate Division denied the *coram nobis* petition, concluding that Monroe failed to establish that he was denied the effective assistance of appellate counsel. *People v. Monroe*, 43 N.Y.S.3d 922 (2d Dep't 2017) ("*Monroe III*").  Monroe did not seek leave to appeal to the New York Court of Appeals from the Appellate Division's denial of his petition for a writ of error *coram nobis*.

B.      *Proceedings Below*

On June 30, 2016, Monroe filed the Petition, raising the same claim he raised on direct appeal to the Appellate Division -- that he was denied his statutory right to exercise peremptory challenges and that his due process right to a fair trial was violated because the court did not allow defense counsel to make an untimely peremptory challenge.  He also asserts a second ground -- echoing his *coram nobis* petition -- that he received ineffective assistance of appellate counsel for various reasons.  *See* Dkt. 2.  On May 10, 2017, Respondent timely filed its opposition to the Petition.  *See* Dkt. 14.

8

On May 26, 2022, Monroe filed in Queens Supreme Court another § 440 motion to vacate judgment, claiming actual innocence.  Dkt. 34 at 2, 8-16.  On June 21, 2022, and September 9, 2022, Monroe filed motions to stay the Petition pending resolution of his second § 440 motion.  Dkts. 28, 35.  Respondent has opposed the motions for a stay.  Dkts. 29, 34.

## DISCUSSION

### I. *Federal Review of State Convictions*

A federal court may not grant a habeas petition on a claim that was adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017).  Hence, when a claim is adjudicated on the merits, the state court's decision must be accorded "substantial deference."  *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015).  "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'"  *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam).

A state law error is not sufficient for habeas corpus relief unless it rises to a level that implicates a constitutional right. *Wainwright v. Good*e, 464 U.S. 78, 84-86 (1983) (per curiam); *see also Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). The Supreme Court has repeatedly held that there is "no freestanding constitutional right to peremptory challenges." *Rivera v. Illinois*, 556 U.S. 148, 157 (2009); *see also United States v. Martinez-Salazar*, 528 U.S. 304, 311 (2000) ("[U]nlike the right to an impartial jury guaranteed by the Sixth Amendment, peremptory challenges are not of federal constitutional dimension."). In *Rivera v. Illinois*, the defendant argued that the Due Process Clause required reversal of his conviction because the trial judge erroneously denied a peremptory challenge. 556 U.S. at 156. The Supreme Court explained that states may withhold peremptory challenges "altogether without impairing the constitutional guarantee of an impartial jury and a fair trial" and that just as state law controls the exercise of peremptory challenges, state law determines the consequences of an erroneous denial of peremptory challenges. *Id.* at 152 (quoting *Georgia v. McCollum*, 505 U.S. 42, 57 (1992) (collecting cases)). The Court concluded that the loss of a peremptory challenge is "not a matter of federal constitutional concern" and that the judge's refusal to grant the peremptory challenge did not violate the defendant's constitutional rights. *Id.* at 157-58.

Before seeking federal habeas relief, a state habeas petitioner must exhaust his state remedies by presenting his constitutional claims to the state courts.

28 U.S.C. § 2254(b)(1).  A constitutional claim is not exhausted until the essential

factual and legal premises of the constitutional claim have been presented to the

highest state court capable of reviewing it.  *Bierenbaum v. Graham*, 607 F.3d 36, 47 (2d

Cir. 2010); *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005); *see also Jones v. Vacco*, 126

F.3d 408, 413 (2d Cir. 1997).  Additionally, an applicant is not deemed to have

exhausted his state remedies if he has the right under state law to raise, "*by any*

*available procedure*, the question presented."  28 U.S.C. § 2254(c) (emphasis added).  If

a defendant has a claim of ineffective assistance of appellate counsel, the claim is

reviewable by *coram nobis* to the Appellate Division, *People v. Bachert*, 509 N.E.2d 318,

321-22 (N.Y. 1987), and the defendant may seek leave to appeal to the New York

Court of Appeals from the Appellate Division's denial of the *coram nobis* petition, *see*

N.Y. Crim. Proc. Law § 450.90(1).

When evaluating an ineffective assistance of appellate counsel claim, a

federal court applies the standards of *Strickland v. Washington*, 466 U.S. 668 (1984).

To show that appellate counsel representation was ineffective under *Strickland*, a

defendant "must establish that (1) the attorney's representation fell below an

objective standard of reasonableness; and (2) the deficient representation prejudiced

the defense." *Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001).  "Under § 2254(d)(1),

we must determine not whether the state court was incorrect or erroneous in

rejecting [an] ineffective assistance claim, but whether it was 'objectively

unreasonable' in doing so." *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362).

"[W]hen a claim of ineffective assistance of counsel is based on failure to raise viable issues, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal." *Clark v. Stinson*, 214 F.3d 315, 328 (2d Cir. 2000) (quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)). "A petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo*, 13 F.3d at 533. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985)).

The standard to establish an ineffective assistance of counsel claim under New York law is lower than under federal law. *See People v. Honghirun*, 78 N.E.3d 804, 807 (N.Y. 2017). In New York, a defendant must show only "that counsel failed to provide meaningful representation." *People v. Alvarez*, 125 N.E.3d 117, 120 (N.Y. 2019) (citing *People v. Stultz*, 810 N.E.2d 883 (N.Y. 2004); *People v. Baldi*, 429 N.E.2d 400 (N.Y. 1981)). Unlike the federal standard, *see Strickland*, 466 U.S. at 694, under the state standard, the defendant is not required to demonstrate that he was prejudiced by the ineffective assistance, *see Alvarez*, 125 N.E.3d at 120.

## II.   *Analysis*

Monroe raises two claims in this Petition: (1) he was denied his statutory right to exercise preemptory challenges and, as a result, his due process right to a fair

trial before an impartial jury was violated and (2) his appellate counsel was ineffective for various reasons.  I address each claim in turn.

### A.    *Exercise of Peremptory Challenges*

The Supreme Court has held that the denial of peremptory challenges does not implicate a constitutional right.  *See Rivera*, 556 U.S. at 152, 157.  Monroe's claim is a matter of state law, and the attempt to make the claim a matter of federal constitutional law fails because there is no constitutional right to peremptory challenges.  *See id.*  The Second Circuit has noted that "errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." *DiGuglielmo v. Smith*, 366 F.3d 130, 136 (2d Cir. 2004) (citation omitted).  Monroe's claim is purely that state law was violated, and "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  Moreover, the Appellate Division's conclusion that the trial court "providently exercised its discretion in denying the defendant's belated peremptory challenge" is entitled to substantial deference and is not unreasonable.  *Monroe I*, 987 N.Y.S.2d 243; *see also Fischer*, 780 F.3d at 560; *Waiters*, 857 F.3d at 477.

Accordingly, Monroe's claim that his due process rights were violated because the trial judge did not allow a belated peremptory challenge fails.

### B.    *Ineffective Assistance of Appellate Counsel*

Monroe first raised the ineffective assistance of appellate counsel claim in his first § 440 motion on January 28, 2015, which was denied on May 19, 2015.  Monroe raised the claim again in a writ of error *coram nobis* petition to the Appellate

Division, and the Appellate Division denied the writ on January 11, 2017. *See Monroe III*, 43 N.Y.S.3d 922. Monroe did not seek leave to appeal to the New York Court of Appeals from the Appellate Division's denial of his petition for a writ of error *coram nobis*. Therefore, Monroe's claim that he received ineffective assistance of appellate counsel is procedurally barred. Furthermore, any attempt to file a leave application now would be untimely because a party has thirty days from receipt of an appellate order to seek leave to appeal from the order. N.Y. Crim. Proc. Law § 460.10(5)(a).

Where a petitioner has procedurally defaulted a claim by failing to raise it on direct review, the claim may be reviewed by the habeas court only if the petitioner can first demonstrate either (1) "cause and prejudice," or (2) that a fundamental miscarriage of justice would result if the merits of the federal claim are not considered. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

To establish "cause" for a procedural default, the petitioner must ordinarily show that "some objective factor external to the defense impeded" his effort to comply with the state procedural rule in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008). To establish "actual prejudice," a petitioner must show that "errors at his trial . . . worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Finally, to show that here would be a "fundamental miscarriage of justice," a

14

petitioner must show that "a constitutional violation has probably resulted in the

conviction of one who is actually innocent." *Murray*, 477 U.S. at 496.

Monroe has not met any of these exceptions. First, he has not

presented any facts showing that there was cause for the procedural default.

Furthermore, he cannot show prejudice or fundamental miscarriage of justice

because his claim is meritless. Indeed, the Appellate Division rejected Monroe's

ineffective assistance of appellate counsel claim on the merits, and that decision is

entitled to substantial deference, *see Fischer*, 780 F.3d at 560, and can only be

disturbed if it was "objectively unreasonable," *Sellan*, 261 F.3d at 315.

Monroe claims that appellate counsel failed to raise several issues on

direct appeal to the Appellate Division. First, he claims that appellate counsel

should have raised a claim that his rights under the Confrontation Clause of the

Sixth Amendment of the U.S. Constitution were violated because several people did

not testify: (1) the technician who tested his DNA sample, (2) the detective who

wrote out his written statement, and (3) a detective who interviewed him during his

investigation. First, Monroe has not shown that appellate counsel erred by failing to

raise the claim as to the technician because at the time the conviction was appealed,

prevailing New York state law did not call for the testimony of the DNA technician

in such cases. Monroe's claim as asserted in his *coram nobis* petition relies on *People v.*

*John*, 52 N.E.3d 1114 (N.Y. 2016), which was decided after his trial. Under *Strickland*,

the reasonableness of counsel's conduct must be evaluated "as of the time of

counsel's conduct." 466 U.S. at 690. Appellate counsel did not err in failing to bring

a claim that would have called for "an extension of or change in -- not an application of -- existing law." *People v. Feliciano*, 950 N.E.2d 91, 100-01 (N.Y. 2011). Furthermore, Monroe has not shown that the claim was "stronger than those presented." *Mayo*, 13 F.3d at 533. An analyst from the Office of Chief Medical Examiner testified on direct examination that there were two DNA profiles found under Williams's fingernails, but that "[Monroe] was excluded as a possible contributor," meaning "he was not a contributor." *See* Dkt. 15-9 at 110. Thus, appellate counsel could have deemed any testimony as to the DNA harmless, and it was reasonable for appellate counsel not to raise the claim. *See People v. Cartagena*, 126 A.D.3d 913, 914 (2d Dep't 2015) (applying the harmless error analysis to a Confrontation Clause claim and concluding that a constitutional error was harmless because "there was no reasonable possibility that the erroneously admitted report contributed to the defendant's conviction.").

Second, appellate counsel did not err in failing to raise the claim as to the detective who wrote out the written statement because the other detective who was present during the interview testified, and the written statement was entered into evidence. *See* Dkt. 15-8 at 90, 113. Third, the detective who interviewed Monroe when he made a self-incriminating statement -- Detective Lopresti -- testified and was cross-examined by Monroe's counsel. *See id.* at 122-29. Appellate counsel's decisions with respect to the Confrontation Clause issues did not fall below an objective standard of reasonableness.

Additionally, Monroe claims that his appellate counsel failed to argue that the prosecution permitted two detectives to testify falsely about money that another witness received from them, but defense counsel had adequate opportunity to cross-examine the detectives on this issue, which eliminates his claim of prejudice. *People v. Cortijo*, 517 N.E.2d 1349, 1350 (N.Y. 1987) ("[A] defendant's constitutional right to a fair trial is not violated when . . . he is given a meaningful opportunity to use the allegedly exculpatory material to cross-examine the People's witnesses or as evidence during his case.").

Monroe further claims that trial counsel failed to advance a third-party culpability argument, but counsel was well within reason not to advance such an argument because third-party culpability arguments "may not rest on mere suspicion or surmise," *People v. DiPippo*, 50 N.E.3d 888, 893 (N.Y. 2016), and Monroe did not advance evidence of third-party culpability.  Monroe also claims that the trial court abused its discretion by failing to remove the third-degree criminal possession of a weapon charge from the jury's consideration, even though the elements of fourth-degree criminal possession of a weapon were the same.  Defense counsel requested, at the beginning of jury selection, that the jury be recharged, and the court declined to grant this request because the only change would be the labeling of the offense. *See* Dkt. 15-11 at 75-76.  Appellate counsel's failure to advance this claim on direct appeal was reasonable.

Lastly, one of the claims that Monroe argues appellate counsel failed to advance is factually incorrect.  Monroe claims that the trial court abused its

discretion by failing to issue a justification charge, but the court issued a justification charge to the jury. *See id.* at 49-53.

The Supreme Court has held that the Constitution does not require appointed counsel to raise every colorable claim suggested by a client. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). Here, appellate counsel made a reasonable decision to advance Monroe's strongest argument on appeal and not to advance the weaker arguments. Thus, there was no error of constitutional magnitude regarding Monroe's appellate counsel, and the Appellate Division's decision was not unreasonable. *See Waiters*, 857 F.3d at 477; *Sellan*, 261 F.3d at 315.

Accordingly, Monroe's claim that he received ineffective assistance of appellate counsel also fails.

### III.    *Motions to Stay the Petition*

On June 21, 2022, and September 9, 2022, Monroe asked this Court to stay this Petition pending resolution of his second § 440 motion to vacate judgment, filed on May 26, 2022, which raises the claim of actual innocence on various grounds. *See* Dkts. 28, 35. Monroe's request to stay this Petition is denied. First, Monroe does not assert claims of actual innocence in this Petition, and the claims in his new § 440 motion do not relate back to the claims in this Petition. Therefore, Monroe has not demonstrated the "good cause" required for a district court to grant stay-and-abeyance relief. *Rhines v. Weber*, 544 U.S. 269, 277 (2005). Second, he has not established a reason for his failure to raise the new claims in a motion to vacate sooner, and, indeed, he had previously filed a first § 440 motion and a petition for a writ of error *coram nobis*. Third, Monroe cannot

add the claims asserted in his second § 440 motion to this Petition because the one-year

statute of limitations for the filing a habeas petition has long expired. *See* 28 U.S.C.

§ 2244(d)(1).  Accordingly, the request to stay the Petition is denied.

*CONCLUSION*

Monroe has failed to show any basis for relief under 28 U.S.C. § 2254.

Accordingly, the Petition is denied.  Additionally, I decline to issue a certificate of

appealability because Monroe has not made a substantial showing of the denial of a

constitutional right.  *See* 28 U.S.C. § 2253.  Pursuant to 28 U.S.C. § 1915(a)(3), I certify

that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of the Court shall enter judgment accordingly and close this case.

The Clerk of Court is respectfully directed to mail a copy of this

memorandum decision and the judgment to Monroe at his last address of record.

SO ORDERED.

Dated:     New York, New York
           March 29, 2023

DENNY CHIN
United States Circuit Judge
Sitting By Designation